

**SO ORDERED.**

**SIGNED this 17 day of February, 2010.**

_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **RIM DEVELOPMENT, LLC** | ) | **Case No. 10-10132** |
| | ) | **Chapter 11** |
| | ) | |
| Debtor-in-Possession. | ) | |
| _____ | ) | |

### ORDER CONDITIONING MODIFICATION OF THE STAY ON MOTION OF
### KANSAS DEPARTMENT OF TRANSPORTATION

The Kansas Department of Transportation's (KDOT's) motion for relief from the automatic

stay to proceed with an eminent domain proceeding filed pre-petition in the District Court of Riley

County, Kansas came on for expedited evidentiary hearing on February 11, 2010.[1]  Both the debtor

_____

[1]  Dkt. 30.

-1-

and Textron Financial Corporation filed objections.[2]  After hearing the evidence and statements of counsel, the Court issued a preliminary ruling allowing certain aspects of the eminent domain proceeding to go forward, but directing the stay remain in force except as otherwise set forth in this order.

Findings of Fact

RIM Development LLC ("RIM") filed this case on January 22, 2010, just days prior to the scheduled appraisers' hearing in the eminent domain case.  RIM owns some 500 acres of land in Riley County.  There are both existing as well as planned future real estate developments on this property.[3]  Both Textron and CoreFirst Bank have mortgages on this property, although the extent and priority of those liens remains in dispute.

The RIM property sits adjacent to the present right of way of Kansas Highway 18 (K-18) and is near the city of Ogden ("K-18 Project").  KDOT seeks to condemn easements of right of way and appertaining flowage easements to enable rerouting and widening of K-18 between Ogden and Manhattan.[4]  KDOT filed an eminent domain petition in state court on November 6, 2009.[5]  As required by state law, an initial hearing (known as the "consideration" hearing) was convened in

---

[2]  Dkt. 38, 51.

[3]  The current primary developed parcel consists of 72 residential rental units on an approximate 3.5 acre tract.  At present, this is the only income-producing property in the development.

[4]  The RIM property is one of four eminent domain proceedings being pursued by KDOT for the K-18 Project.

[5]  Dkt. 30-1.  This legal action was commenced after KDOT's October 12, 2009 offer to purchase the needed rights-of-way was not accepted by debtor.  KDOT offered some $1.2 million as compensation for the land to be taken.  Debtor is seeking $6-7 million in compensation.

-2-

Riley County court on December 3, 2009 to consider the petition. At that hearing, the state court found the taking to conform to law and appointed a panel of three appraisers to evaluate the property and conduct an informal appraisers' hearing as required by Kan. Stat. Ann. § 26-506.[6] The appraisers' hearing was scheduled for December 18, 2009, but was continued at the request of the debtor until January 25, 2009. When the debtor filed its petition here on January 22, that hearing was stayed.

KDOT has planned the K-18 Project for some time. Jerome Younger, KDOT's Deputy Secretary for Engineering and State Transportation Engineer, testified that the K-18 Project is estimated to have a project cost in excess of $200,000,000.[7] It is a critical component of improving the busy roadway system that serves Ogden, Fort Riley, and Manhattan. Accordingly, when Congress enacted the American Reinvestment and Recovery Act of 2009 (ARRA), also known as the "stimulus package," this project was one of the 'shovel-ready" projects for which KDOT sought funding. The federal government allocated several hundred million dollars to Kansas for highway improvements. This is one of the projects to which these funds have been assigned. According to the testimony and KDOT's motion, some $108,000,000 of the project cost will be funded with the federal ARRA money. When a project is funded by ARRA, certain deadlines must be met. The evidence showed that, in order for the state to avail itself of these funds, KDOT must "obligate" them by March 2, 2010 and let bids for the project not later than March 22, 2010. The project must be completed not later than March of 2012. Once the project is "obligated" and bids let, the Federal

---

[6] The state court found that KDOT had the power of eminent domain and that the taking was necessary to its corporate purposes, *see* KAN. STAT. ANN. § 26-504 (2008 Supp.).

[7] Dkt. 30-2.

Highway Administration earmarks the $108,000,000 for the K-18 project and, as the project is built, funds are drawn from that set-aside to reimburse the State for its project costs. As the Court understands it, if the initial "obligation" date cannot be met, KDOT may seek a "conditional clearance" of the project such that the funds may be earmarked. Even if that approval is granted, the possibility remains that these funds would not be available. To obtain either a conditional clearance or the actual earmarking of the funds, KDOT must be able to represent that it has or will shortly obtain title to the rights of way. Under the eminent domain process, title to the condemned property does not pass to the State until the appraisers' award is paid into Court.[8] Accordingly, time is of the essence in concluding the eminent domain process in Riley County.

Because the consideration hearing has occurred and the state court has authorized the taking, what remains in the eminent domain case is to determine the amount of the appraisers' award and to file the appraisers' report. The appraisers have been appointed. The appraisers will make an award based on the difference between the value of the land before and after the taking.[9] If the debtor or other landowners protest that award, they have the right to appeal to a trial by jury de novo, a process that could take up to a year.[10] In either event, the property will be taken.[11] After the appraisers' report is filed and the State pays in the award to the registry of the state court, that

---

[8] *See* KAN. STAT. ANN. § 26-507 (2008 Supp.) which provides that upon payment "the title, easement or interest appropriated in the land condemned shall thereupon immediately vest in the plaintiff, and it shall be entitled to the immediate possession of the land . . .". The State will have 30 days after the appraisers' report is filed to pay the money into court.

[9] KAN. STAT. ANN. § 26-513(c).

[10] KAN. STAT. ANN. § 26-508 (2008 Supp.).

[11] *Id.* The only issue on appeal is the amount of compensation to be awarded to the landowner.

amount may be drawn down by the debtor even if it decides to appeal. Then, if the jury directs that more be paid, the State must pay the difference. Likewise, if the jury finds that the award should be reduced, the debtor will be required to repay the difference.

The testimony established that KDOT and the debtor have been actively involved in discussing the nature and extent of the takings, as well as design considerations, since early 2009. The critical issue is the extent and manner in which the State will establish a flowage easement; a waterway that would result in the event of a "100-year" flood. The establishment of the flowage easement will significantly impair the debtor's development plans. This effect can be ameliorated by the placing of certain terminal conditions on the easement grant. As noted in the eminent domain petition, if the debtor builds certain berms or levees in the servient areas, the easement will expire.[12] The debtor and State differ as to how much debtor should receive both in respect of the easement as well as what debtor would incur in building the berms. Debtor says that it requires some 60 days to prepare itself for the appraisers' hearing. At trial, KDOT represented that it is prepared to proceed with the appraisers hearing immediately, but that it will not be materially hampered if that hearing does not occur until March 9 or 10. Deputy Secretary of Transportation Younger testified that, notwithstanding the March 2 "obligation" deadline, a hearing by March 9 or 10 and the issuance of an award by March 17 would allow KDOT to comply with the necessary federal funding guidelines and conditions.

The debtor did not have regular counsel involved in the eminent domain process until late in 2009. At the February 11 expedited hearing, this Court approved the employment of Adams & Jones and Brad Stout, Esq. who will serve as special condemnation counsel to the estate. The debtor

---

[12] *See* Dkt. 30-1, ¶ (m), p. 12-13.

Case 10-10132   Doc# 96   Filed 02/17/10   Page 5 of 9

has hired an appraiser. It had a consulting engineer, BG Engineering, involved in the RIM development planning and negotiation process, but now needs to acquire other engineering assistance in preparing for the appraisers' hearing, possibly because BG filed a prepetition mechanic's lien against the RIM property.

Analysis

KDOT's stay relief motion is brought under § 362(d)(1) [for cause] and (d)(2) [lack of equity in property and property is not necessary to an effective reorganization]. At the expedited evidentiary hearing, the parties focused exclusively on "cause" for stay relief. KDOT bore the initial burden to establish its prima facie position in the case and its need for stay relief for cause. Based on the facts set out above, the Court finds that KDOT met that slight burden. The burden of demonstrating by a preponderance of the evidence that the stay should remain in place then shifted to the debtor.[13] The debtor presented no case in chief, instead relying on cross-examination of the State's witnesses and argument.

What constitutes "cause" for relief from the automatic stay is determined on a case-by-case basis.[14] A court considering whether to lift the stay for cause to allow litigation to go forward in another forum may consider a variety of factors.[15] Courts typically consider whether pursuit of the

---

[13] Section 362(g)(2). *In re Unioil*, 54 B.R. 192, 194 (Bankr. D. Colo. 1985) (Absent issues concerning debtor's equity in property, debtor has the burden of proof in opposing stay relief motion.); *In re Busch,* 294 B.R. 137, 140-41 (10th Cir. BAP 2003) (Movant has the burden to show that "cause" exists to lift the stay, after which the burden shifts to debtor to demonstrate why the stay should remain in place.).

[14] *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987); *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003).

[15] *See In re Kansas Psychiatric Institutes, Inc.,* 186 B.R. 723 (Bankr. D. Kan. 1995), citing the following factors to determine if "cause" exists to permit a party to continue a pending action in another forum: whether the estate or debtor will suffer great prejudice if suit is allowed

-6-

outside litigation will hamper the debtor's reorganization. They also consider whether the relief will partially or completely resolve the issues in the case. Courts weigh the prejudice to the creditors or the estate of allowing the litigation to proceed against the prejudice caused to the movant by leaving the stay in force.[16]

If the eminent domain proceeding does not move forward in the next 30 days, the harm the State will incur by losing some $108,000,000 in federal funds for the K-18 Project will be egregious and, the Court suspects, irreparable given the State's current financial crisis. The debtor does not claim that participation in the litigation will preclude it from doing other things important in the chapter 11 process or hamper reorganization; all debtor essentially wants here is an extension of time to prepare for the appraisers' hearing. It seeks to use the stay to secure that extension. The Court concludes that the timely fixing of the amount of the appraisers' award in the eminent domain case will help to move the reorganization forward by valuing an important estate asset. Indeed,

---

to proceed, impact of continued stay on movant and other parties, judicial economy and need for expeditious determination of litigation between parties, whether action involves third parties, and whether relief will result in partial or complete resolution of the issue. In that case, stay was lifted to permit creditor to determine enforceability of substitute letters of guaranty because the letters of guaranty were about to expire and creditor might suffer prejudice. *See also, In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984) (citing 12 factors); *In re Bison Resources, Inc.,* 230 B.R. 611 (N.D. Okla. 1999) (specialized expertise of the non-bankruptcy forum cited as one of the factors; not all factors need be present in order for stay relief to be granted and that equal weight need not be given to each factor)

[16] *See In re Quality Supplier General Partnership,* 176 B.R. 135 (Bankr. D. Md. 1994) (In weighing a debtor's right to reorganize and a state's sovereign right of eminent domain, the federal interest in protecting a debtor's right to reorganize should prevail, *if* it can be accommodated without causing substantial harm to the state's interest in pursuing condemnation. But if an irreconcilable conflict exists between debtor's opportunity to reorganize and the public interest served by the exercise of eminent domain powers, the debtor's reorganization must yield); *Commonwealth of Mass.v. Bartlett,* 384 F.2d 819 (1ˢᵗ Cir. 1967), *cert denied* 390 U.S. 1003 (1968) (The state's interest and right to take property for public use is of great importance and must prevail if in conflict with a successful reorganization.).

debtor has indicated in previous hearings that the condemnation award will be used to partially fund its plan of reorganization. There is no need at this point for the allocation of the award by tract or by lien holder, although state law clearly authorizes the state court to do that in the eminent domain case.[17]

Balancing the prospective harm and considering the overwhelming public interest in securing federal funding for the K-18 Project, the Court concludes that the automatic stay should be modified as follows: KDOT should be authorized to proceed with the appraisers' hearing no sooner than March 9, 2010, with the intention that the appraisers file their report and make their award not later than March 17, 2010. When that occurs, and the State pays in the award to the Riley County District Court registry, those funds, being property of the estate, may be withdrawn by the debtor and held in a dedicated interest-bearing account of the debtor-in-possession subject to the further order of this Court. Upon appropriate motion, this Court will decide whether to allocate the funds among the creditors and the debtor or to defer that task to the state court. Both Textron and CoreFirst shall have limited stay relief sufficient to enable them to participate in the appraisers hearing and any subsequent appeal and be heard concerning the extent of the lump-sum award. No further stay relief is accorded to any party in connection with the eminent domain matter.

KDOT's motion is GRANTED as set forth above and the balance is denied. KDOT's stay relief shall not be subject to the 14-day stay set forth in Fed. R. Bankr. P. 4001(a)(3). The debtor's objections are overruled and the stay lifted as to Textron's and CoreFirst's participation for the limited purpose set out above. The debtor may immediately seek leave to employ the necessary professionals and experts to defend its position in the eminent domain proceeding and the 20-day

---

[17] *See* KAN. STAT. ANN. § 26-517.

objection period set out in L.B.R. 2014.1 is shortened to 5 days.

The Clerk of this Court is directed to provide a courtesy copy of this Order to the District

Court of Riley County where the eminent domain case (Case No. 09-CV-253) is pending.

IT IS SO ORDERED.

# # #